(C. D. 1133)

NYLOS TRADING CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 13, 1948)

*John D. Rode* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Guy G. Ribaudo,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: The plaintiff in this case imported from Brazil 63 drums containing oil described on the invoice as "Pataua oil." The collector of customs assessed duty thereon at the rate of 20 per centum ad valorem under the provision in paragraph 53 of the Tariff Act of 1930 (19 U. S. C. 1946 ed. §1001, par. 53) for "all other expressed or extracted oils, not specially provided for." The complete text of paragraph 53 will be found in the margin.[1]

The plaintiff claims the merchandise to be entitled to free entry under the provision in paragraph 1732 of the same act for "Oils, expressed or extracted: * * * palm * * * ," and the text of paragraph 1732 will likewise be found in the margin.[2]

---

[1] PAR. 53. Oils, vegetable: Castor, 3 cents per pound; hempseed, 1½ cents per pound; linseed or flaxseed, and combinations and mixtures in chief value of such oil, 4½ cents per pound; olive, weighing with the immediate container less than forty pounds, 9½ cents per pound on contents and container; olive, not specially provided for, 6½ cents per pound; poppy seed, 2 cents per pound; rapeseed, 6 cents per gallon; all other expressed or extracted oils, not specially provided for, 20 per centum ad valorem.

(Note: The foregoing rates have been modified in some instances, but such changes are not material here.)

[2] PAR. 1732. Oils, expressed or extracted: Croton, palm, perilla, and sweet almond; olive, palm-kernel, rapeseed, sunflower, and sesame oil, rendered unfit for use as food or for any but mechanical or manufacturing purposes, by such means as shall be satisfactory to the Secretary of the Treasury and under regulations to be prescribed by him; tung oil; and nut oils not specially provided for.

There is no dispute that there are many genera of palm trees, and that the fruits of a number of them yield oils. The oil in question was obtained from the fleshy part of the fruit of the palm *Oenocarpus bataua*. As it appears in what is said to be a typical sample which was received in evidence without objection as illustrative exhibit B, it is a liquid of yellow-greenish color, of about the same viscosity as olive oil, and has a rather distinctive odor. There was also received in evidence without objection as illustrative exhibit A a sample of oil obtained from the fruit of the palm *Elaeis guineensis*. This appears to be a semi-liquid of orange-red color, having a thick, greasy, or buttery consistency, and an odor somewhat different from that of illustrative exhibit B.

The position of the plaintiff is that so-called "Pataua oil," the imported oil represented by illustrative exhibit B, is a palm oil, and that the term "palm oil" as used in the statute includes oils obtained from any of the oil palms. The position of the defendant, on the other hand, is that the term "palm oil," both as commonly understood and as used in the trade and commerce of the United States, refers only to oil obtained from varieties of the palm *Elaeis guineensis* and having characteristics shown by illustrative exhibit A.

The plaintiff offered the testimony of a botanist and two chemists. The botanist stated that the palm family is divided by botanists into three groups, viz, the coco palms, the date palms, and the oil palms. The most important of the latter, he said, were the species *Elaeis guineensis* and *Elaeis melanococca*, and among the principal ones were *Cocos butyracea* and *Areca oleifra*, and among the many palms included in the group of oil palms was *Oenocarpus bataua*.

One of the chemists who was called to testify by the plaintiff was the technical director of the ultimate consignee, who stated that the imported pataua oil was used in the manufacture of soap. On cross-examination this witness stated that the palm oil he bought as palm oil was either of a deep orange color in a semisolid state at room temperature and had a characteristic odor, or a bleached type which looked like butter and did not have the characteristic odor. He also stated that when he requisitioned palm oil he expected oil of the palm *Elaeis guineensis*, and when he requisitioned pataua oil he expected oil of the palm *Oenocarpus bataua*.

Plaintiff's other witness was the chief chemist of the New York Produce Exchange, who testified that the bureau under his supervision analyzed all commodities traded on the exchange, among which are vegetable oils, including palm oils. He testified that there are many types of palm oils and stated his opinion that pataua oil is a palm oil. On cross-examination he stated that there were important chemical differences between the oil derived from the palm *Elaeis guineensis*, as represented by illustrative exhibit A, and the oil derived from the

palm *Oenocarpus bataua*, as represented by illustrative exhibit B, and that neither would be a substitute for the other nor would one be a good delivery for the other. This witness also testified that he recognized a palm oil from a species of palm known as *Cocos butyracea*.

Three witnesses testified for the defendant. The first, a dealer in fats and oils, including palm oil, testified that only the oil represented by illustrative exhibit A, derived from the palm *Elaeis guineensis* is known in the trade dealing in such commodities as palm oil. To the same effect was the testimony of defendant's second witness, a chemical engineer. Both of these witnesses were unfamiliar with the oil represented by illustrative exhibit B. Defendant's last witness, a chemist who was director of standards and quality control for a large soap-manufacturing concern, also testified that the oil represented by illustrative exhibit A was what is known in the trade as palm oil.

From the foregoing it is apparent that the term "palm oil" may be used in either of two senses, viz, as a generic or descriptive term denominating all of the oils obtained from palm trees, or as an *eo nomine* designation of a particular oil, to wit, that having the characteristics exhibited in illustrative exhibit A or the same oil in the bleached state.

In our view Congress did not use the term as it appears in the statute, paragraph 1732, *supra*, in a descriptive sense, but as the *eo nomine* designation of a particular oil. Tariff acts are drafted in the language of commerce, which is presumptively that in common use. *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436. All of the witnesses in this case who were familiar with the trade and commerce of the United States which deals in palm oil were unanimous in indicating that the term "palm oil," as used therein, referred only to oil of the type of illustrative exhibit A. This commercial understanding of the term is the same as the common meaning as shown by standard dictionary definitions.

Webster's New Standard Dictionary, 2d Ed., 1945, gives the following definition of "palm oil":

> A solid yellow or reddish fat or butter obtained from the flesh of the fruit of several species of palms, esp. the oil palm, and used in the manufacture of soap and candles, in coating iron plates to be tinned, in lubricating greases, etc.

In the list under the word "oil," Funk & Wagnalls New Standard Dictionary, 1942, shows the source of palm oil to be "Fruit, as of *Elaeis guineensis*," and we note that the same work lists "coumou oil" and its source as "Nuts of varieties *Oenocarpus*."

The article on "palm oil" in the Encyclopaedia Britannica, 1947, Vol. 17, page 160, states that palm oil is—

> A fatty oil obtained from the fleshy part of the fruit of the oil-palm (*Elaeis guineensis* Jacq.), a tree indigenous to the west coast of Africa.

A like understanding of the term "palm oil" is displayed by scientific authorities on the subject. In "Chemicals of Commerce" by Snell, 1939, the following appears:

Palm oil or palm butter is reddish yellow and contains glycerides of palmitic, stearic and oleic acids. The fresh oil has a violet-like odor. Commerically it often has the odor of fatty acids from rancidity. It is obtained from the fermented pulp of the fruit of the palm tree, *Elaeis guineensis*, grown in South America and West Africa.

In Vol. 2 of Lewkowitsch's "Chemical Technology and Analysis of Oils, Fats and Waxes," Fifth Edition, 1914, the following appears at page 533 under the caption "Palm Oil":

Palm oil is obtained from the fruit of the palm tree *Elaeis guineensis*, L. (Jacq.), which form vast forests along the West Coast of Africa, extending between Gambia and St. Paul de Loanda. The West Coast of Africa is practically the only source of palm oil. *Elaeis guineensis* forms a very large number of subspecies for a description of which the reader is referred to *A. Chevalier* and to *J. Adam*.

Another species of the palm tree, viz. *Elaeis melanococca*, Gärt. (*Alfonsia oleifera*, Humb.), is cultivated in South America (Venezuela), in the province Amensis in Brazil, in the West Indies, in Java, and North Burmah. * * - *

It is noteworthy that in the same volume of the same work Lewkowitsch refers on page 237 to "coumou oil, batava oil," which, he says—

* * * is obtained from the kernels of the palm trees: *Oenocarpus batava*, Mart., *OE. bacaba*, Mart., which frequently occur in tropical South America and bear a berry-like fruit, which ripens all through the year. The kernels are boiled out with water, when a pale yellow limpid oil—"coumou oil," "batava oil"—rises.

It is also indicated by the same authority that "Patava oil appears to be a corruption of batava oil." The evidence offered herein indicates that the oil in question is variously known as "pataua," "coumou," or "patau" oil.

It thus appears that as recognized by lexicographers, scientific authorities, and by the trade and commerce of the United States dealing in such oils, "palm oil" refers to oil having the characteristics of illustrative exhibit A, and we conclude that it was this oil which Congress intended to be covered by the provision found in paragraph 1732 for palm oil.

This view is strengthened by reference to the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives during the revision of the Tariff Act of 1922 which ultimately became the Tariff Act of 1930. At page 2487 thereof the following is found:

### PALM OIL

Description and uses.—Palm oil is obtained from the outside fleshy portions of the ripe fruit of the palm tree, which is grown principally in West Africa and in

Sumatra. * * * Palm oil is usually orange colored, but may be bleached white.

Reference to page 145 of the Tariff Information Survey A–11 on Animal and Expressed Vegetable Oils and Fats (1921) shows the following:

Palm and palm-kernel oils are obtained from different parts of the fruit of the palm tree (*Eloeis guineensis*), which forms vast forests along the coast of West Africa. The outside part of the fruit consists of a layer composed of a soft fibrous pulp (pericarp) containing 55 to 65 per cent of an orange colored semisolid fat, which is the palm oil of commerce.

We think it noteworthy to add that the oil derived from the palm *Cocos butyracea*, identified by one of the plaintiff's witnesses as "palm oil," is stated by Snell (page 309) and by Lewkowitsch (page 624) in the works already cited to be coconut oil. The fact that coconut oil is specifically provided for in paragraph 54 of the Tariff Act of 1930 adds support to the view that Congress did not intend by the provision in paragraph 1732, *supra*, for "Oils, expressed or extracted: * * * palm * * *" to include all of the oils derived from palm trees, as plaintiff contends, but only the particular oil in the crude or advanced state known to commerce by that name.

We conclude that the collector properly classified the merchandise at bar, and the protest claim is therefore overruled.

Judgment will issue accordingly.